UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY JUDITH MEZA MARTINEZ, *et al.*,<br><br>Petitioners,<br><br>v.<br><br>JAMES JANECKA, *et al.*<br><br>Respondents. | Case No. 5:25-cv-02787-CV (PDx)<br><br>**ORDER GRANTING IN PART EX PARTE REQUEST AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [7]** |

On October 31, 2025, Petitioners Jenny Judith Meza Martinez ("Meza Martinez"), Manolo Arbizu Brenes ("Brenes"), and Enma De Maria Martinez Garcia ("Martinez Garcia") (collectively, "Petitioners") filed an Ex Parte Request and Application for Temporary Restraining Order and/or Order to Show Cause Re: Preliminary Injunction ("Application"). Doc. # 7 ("App."). On November 3, 2025, Respondents filed an Opposition, and on November 4, 2025, Petitioners filed a Reply. Doc. # 10 ("Opp."); Doc. # 11 ("Reply"). Having reviewed and considered all the briefing filed with respect to the Application, the Court finds that oral argument is not necessary to resolve the Application, *see* Fed. R. Civ. P. 78(b); Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001), and concludes as follows.

## I. INTRODUCTION

On October 21, 2025, Petitioners filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. section 2241 (the "Petition") against the warden of the Adelanto Detention Center, James Janecka, the Director of the Los Angeles Field Office of the United States Immigration Customs and Enforcement ("ICE"), Daniel T Tovar, the Attorney General, Pam Bondi, the Secretary of the Department of Homeland Security, Kristi Noem, and the Acting Director of ICE, Todd Lyons (collectively, "Respondents"). Doc. # 1 ("Pet."). The Petition seeks a writ or injunctive relief ordering Petitioners' immediate release. *Id.* at prayer for relief. The Application seeks a Temporary Restraining Order ("TRO") ordering that (1) Respondents immediately release Petitioners from custody under the conditions of their original supervision, and (2) Respondents are prohibited from re-detaining Petitioners without prior approval from this Court. Doc. # 7-2.

## II. FACTUAL BACKGROUND

Petitioners are all individuals held in the physical custody of Respondents at the Adelanto Detention Facility in Adelanto, California. Pet. ¶ 1.

### A. Meza Martinez and Brenes

Petitioners Meza Martinez and Brenes are husband and wife, and were arrested on October 10, 2025 in San Gabriel. *Id.* ¶¶ 16, 26, 31. Prior to their arrest, Meza Martinez and Brenes had been residing in the United States since November 2022. *Id.* ¶ 26. On November 30, 2022, Meza Martinez and Brenes were inspected by CBP, and were placed on an order of supervision with electronic monitoring. *Id.* Meza Martinez and Brenes filed a timely affirmative application for asylum and withholding or removal with the USCIS, which remains pending as of the date of the Petition. *Id.* ¶ 27.

Following their arrest, Meza Martinez and Brenes were not charged with any crime, and were not interviewed. *Id.* ¶¶ 36–37. They allege that "the deportation officer who 'revoked' their order on supervised release provided no reason for the revocations." *Id.* ¶ 37. Meza Martinez and Brenes were not allowed to post a bond and remain in custody. *Id.* ¶ 44.

B.  Martinez Garcia

Petitioner Martinez Garcia was detained at her September 16, 2025 regularly scheduled ICE check-in appointment after Respondents revoked her order of supervision. *Id.* ¶ 54. Prior to her arrest, Martinez Garcia had been residing in the United States since re-entering sometime between 2014 and 2016. *Id.* ¶¶ 48–49. After being apprehended by Border Patrol officers in 2016, Martinez Garcia was placed on an order of supervision. *Id.* ¶ 50. Martinez Garcia received a negative reasonable fear determination related to her removal, which she has appealed to the Ninth Circuit. *Id.* ¶¶ 49–51, 53.

Following her 2025 arrest, Martinez Garcia was not interviewed, and the deportation officer who revoked her order on supervised release provided no reason for the revocation. *Id.* ¶ 55. Martinez Garcia has not been allowed to post a bond and remains in custody. *Id.* ¶ 58.

### III. LEGAL STANDARD

The standard for issuing a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a temporary restraining order and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a temporary restraining order must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. &*

*Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a temporary restraining order may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other *Winter* factors are also met. *Id.* at 1132.

IV. **DISCUSSION**

In the Application, Petitioners argue that (1) their detention is governed by 8 U.S.C. section 1226(a), which provides that they are entitled to a bond hearing, (2) the Due Process Clause prohibits Respondents from taking them into custody when they have not violated any conditions of release, and (3) their parole cannot be revoked without proper notice and a hearing.

In response, Respondents argue that (1) the Court lacks jurisdiction over the case, (2) Petitioners detention is governed by 8 U.S.C. section 1225(b)(2) which does not require a bond hearing, (3) Petitioners have not established that they had active parole status, and (4) the Application is procedurally improper because it does not contain the declaration required by Local Rule 65-1.

As a preliminary matter, the Court is satisfied that Petitioners have satisfied the requirements of Local Rule 65-1. Notably, Respondents had notice of the TRO, and the requirements of Federal Rule of Civil Procedure 65(b)(1) are therefore not applicable.

Next, the Court is not persuaded by Respondents' argument that the Court lacks jurisdiction over this case. This exact issue has been addressed by numerous federal courts, including many in this District. *See, e.g.*, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 2670875 (C.D. Cal. July 28, 2025); *Ceja Gonzalez v. Noem*, No. 5:25-cv-2054-ODW-BFM, 2025 WL 2633187 (C.D. Cal. Aug. 13, 2025); *Benitez v. Noem*, No. 5:25-cv-2190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Zaragoza Mosqueda v.*

*Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025).[1] The Court finds the reasoning set forth in these decisions to be persuasive, and accordingly, for the reasons stated in these decisions, the Court finds that 8 U.S.C. section 1252(b)(9) and section 1252(g) do not present jurisdictional bars. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018).

### A. Likelihood of Success on the Merits

Petitioners have shown a likelihood of success on the merits.

First, the parties focus most of their briefing on whether 8 U.S.C. section 1226(a) or 8 U.S.C. section 1225(b)(2) applies to Petitioners' detention. For the reasons set forth in *Zaragoza Mosqueda* and other recent decisions in this District, the Court finds that 8 U.S.C. section 1225(b)(2) does not apply, and Petitioners are not subject to mandatory detention. *See Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM; *Ceja Gonzalez*, No. 5:25-cv-2054-ODW-BFM; *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Benitez*, No. 5:25-cv-2190-RGK-AS; *Zaragoza Mosqueda*, 2025 WL 2591530; *Arreola Armenta v. Noem*, No. 5:25-cv-2416-JFW(SP) (C.D. Cal. Sept. 16, 2025); *Sandoval Hernandez v. Noem*, No. 5:25-cv-02563-FMO (AGRx) (C.D. Cal. Oct. 9, 2025).

Next, Petitioners argue that they had previously been released pursuant to parole or an order of supervision pursuant to 8 U.S.C. section 212(d)(5) or 8 U.S.C. section 1226(a). As to Petitioners Meza Martinez and Brenes, the Court agrees with the Government that although Petitioners establish that they were originally paroled, their parole status expired in January 2023 (Pet. at 36, 47), and Petitioners have not established that they had valid parole status when they were arrested in 2025. However, Petitioner Martinez Garcia's Order of Supervision does not include an expiration date, and she declared that she had

---

[1] Notably, Respondents acknowledge that the arguments made in their Opposition reiterate the same legal position taken in the *Bautista*, *Ceja Gonzalez*, and *Benitez* cases. Opp. at 1.

been reporting to ICE up until her arrest in September 2025 (which occurred at her meeting with ICE). Pet. at 58–63, 75.

### i. *Meza Martinez and Brenes*

Because Petitioners Meza Martinez and Brenes have not established that they had valid parole status upon their arrest, the Court finds that they were arrested pursuant to 8 U.S.C. section 1226(a). For the reasons set forth in *Zaragoza Mosqueda* and the other recent decisions in this District cited above, Petitioners ongoing detention without an individualized bond hearing before an Immigration Judge is unlawful. The Court therefore finds that Petitioners Meza Martinez and Brenes are likely to succeed on the merits of their claims.

### ii. *Martinez Garcia*

Because Petitioner Martinez Garcia has established that she was subject to an Order of Supervision upon her arrest, the Court finds that her re-arrest likely violated her procedural due process rights.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. That interest is particularly weighty when government detention is at issue. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects.").

These due process rights apply to noncitizens residing in the United States. The Supreme Court has firmly established that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (citation omitted)).

Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody.

1      Because due process applies, the remaining question is what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The constitution typically 'requires some kind of a hearing *before* the State deprives a person of liberty or property,'" particularly because the loss of liberty "cannot be fully compensated after the fact." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). When determining what procedures are required by due process, courts apply the three-part test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts must consider three factors: (1) "the private interest" at stake; (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335.

                                          1.      Private Interest at Stake

     First, Petitioner Martinez Garcia gained a liberty interest in her continued freedom when she was released on an Order of Supervision, which implied a promise that she would not be re-detained so long as she abided by the terms of her release. *See Salcedo Aceros*, 2025 WL 2637503, at *7; *Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *8 (N.D. Cal. Sept. 26, 2025). Under federal regulations, DHS's decisions to release Petitioner necessarily involved a determination that Petitioner was not a danger to the community nor a flight risk. *See* 8 C.F.R. § 1236.1(c)(8).

     The Court has no indication that circumstances have since changed. Having met the conditions imposed by the government upon her release, Petitioner has a liberty interest in her continued freedom. *See Valencia Zapata*, 2025 WL 2741654, at *8. The government's decision to release Petitioner for years following her initial detention gave her a protected interest in her continued liberty. *Calderon v. Kaiser*, 25-cv-06695-AMO, 2025 WL 2430609, at *3 (N.D. Cal. Aug. 22, 2025); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025). Respondents "cannot now about-face

and extinguish these liberty interests by pursuing mandatory detention against Petitioners." *Valencia Zapata*, 2025 WL 2741654, at *9.

Further, as the Court has already held, 8 U.S.C. section 1225 does not apply, and Respondents' detention of Petitioner is therefore discretionary, not mandatory.

Accordingly, the Court finds that Petitioner has a significant privacy interest in her continued liberty, and thus the first *Mathews* factor favors Petitioner.

### 2. Risk of Erroneous Deprivation

The second *Mathews* factor also favors Petitioner. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690 (citation omitted). As described above, Petitioner was released on an Order of Supervision. By releasing Petitioner, immigration officers necessarily determined that she was neither a flight risk nor a danger to the community. And in the intervening years, there has been no indication that Petitioner has become a flight risk or a danger to the community. Absent a pre-detention hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that Petitioner's re-detention will not be pursuant to a valid state interest. *See Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025).

Although 8 U.S.C. section 1226(a) does not require a pre-deprivation hearing, but only a post-deprivation hearing, the Court concludes that the high risk of erroneous deprivation in this case likely means that a pre-deprivation hearing is constitutionally necessary. *See Valencia Zapata*, 2025 WL 2741654, at *11.

### 3. Respondents' Interest

Third and finally, this Court joins other recent district court decisions in concluding that Respondents' interest in keeping Petitioner detained or re-detaining Petitioner without a pre-deprivation hearing is low "because ICE previously made the determination to release [her], and there is no evidence in the record of any changed circumstances that might cause ICE to reconsider its parole determination." *Aviles-Mena*, 2025 WL 2578215, at *6;

*Valencia Zapata*, 2025 WL 2741654, at *11. Furthermore, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (quoting *Becerra*, 2025 WL 691664, at *6). The fact that Petitioner had consistently appeared for her immigration proceedings further confirms the Court's determination as to Respondents' limited interest.

Because all three *Mathews* factors favor Petitioner, the Court concludes that Petitioner has demonstrated, at the very least, a serious question going to the merits of her procedural due process claim.[2]

### B. Irreparable Harm

Petitioners are likely to suffer irreparable harm in the absence of a TRO because they are being detained, which constitutes a loss of liberty that is irreparable. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

### C. Balance of Equities and Public Interest

Where the government is the opposing party, balancing of the equities and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from

---

[2] Because the serious questions prong is satisfied as to Petitioners' procedural due process claim, the Court does not reach the likelihood of success as to the remaining claims. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1139 (9th Cir. 2011).

constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Likewise, in the absence of an injunction, Petitioners are and will continue to experience prolonged detention, their children will remain without a parent, and their families will suffer significant financial consequence.

If Petitioners truly meet the constitutional requirements for civil immigration detention, any harm to the government should be minimal. Petitioners have not been shown to be a flight risk or a danger to the community, and the government can provide them notice and a hearing before a neutral arbiter.

D. <u>Appropriate Remedy</u>

While the Court has found that Petitioners have made the requisite showing for the Court to grant a TRO, it cannot grant Petitioners' requested relief in full. Petitioners ask the Court to issue an order (1) directing Respondents to "immediately RELEASE Petitioners from custody under the conditions of each Petitioner the order of recognizance and supervision as originally issued by CBP," and (2) prohibiting Respondents "from re-detaining Petitioners without prior approval from this Court or until this Order expires." Doc. # 7-2.

For the reasons described above, the Court will not order that Petitioners Meza Martinez and Brenes be immediately released, because they have not shown that they had valid parole status at the time of their arrest. However, because Petitioners Meza Martinez and Brenes have been detained without a bond hearing, the Court will order that Respondents are enjoined from continuing to detain Petitioners Meza Martinez and Brenes unless they are each provided with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. section 1226(a) within seven calendar days of the filing date of this Order.

As to Petitioner Martinez Garcia, the Court has found that Petitioner has made the requisite showing for the Court to grant her immediate release. However, the Court will not require an order from this Court to re-detain Petitioner, and will rather enjoin Respondents from re-detaining Petitioner without notice and a pre-detention hearing.

Because the Court seeks to go no further than necessary to ensure that Petitioners receive the appropriate due process protections, the Court will not impose the requirement that Respondents only re-detain Petitioners subject to an order from this Court. "Courts should act cautiously when reviewing matters entrusted to the Executive Branch, especially those involving immigration, lest it alter the balance between co-equal branches of government." *Jazi v. Rubio*, No. 25-cv-27 BEN, 2025 WL 2420690, at *2 (S.D. Cal. Aug. 20, 2025); *see also Noem v. Vasquez Perdomo*, 606 U.S. ___, 2025 WL 2585637, at *5 (2025) (Kavanaugh, J., concurring) ("Especially in an immigration case like this one, it is also important to stress the proper role of the Judiciary . . . . [W]e . . . must decline to step outside our constitutionally assigned role to improperly *restrict* reasonable Executive branch enforcement of the immigration laws." (emphasis in original)). Moreover, because the Immigration Courts serve as the apparatus to adjudicate most day-to-day immigration matters—including by providing pre-deprivation hearings—this Court is not the appropriate forum for such a hearing. Accordingly, the Court finds only that Petitioner Martinez Garcia must receive notice and a pre-deprivation hearing before Respondents can re-detain her.

## V.  CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Petitioner's Application and ORDERS as follows:

1. Respondents are enjoined from continuing to detain Petitioners Meza Martinez and Brenes unless they are each provided with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. section 1226(a) within seven calendar days of the filing date of this Order.

2. Respondents are ordered to immediately release Petitioner Martinez Garcia from her custody, and are enjoined and restrained from detaining Petitioner Martinez Garcia without notice and a pre-detention hearing.

3. To preserve the Court's jurisdiction, respondents are enjoined from transferring, relocating, or removing Petitioners outside of the Central District of California pending final resolution of this case or further order of the Court.

4. This temporary restraining order shall take immediate effect and expires at 5:00 p.m. PT on November 21, 2025. The temporary restraining order may be extended for good cause or upon Respondents' consent.

5. Respondents are ordered to show cause why a preliminary injunction should not issue. *See* C.D. Cal. L. R. 65-1. Respondents must file any written response to the Order to Show Cause no later than November 17, 2025. Failure to file a response by this deadline shall be deemed as consent to the granting of a Preliminary Injunction. Petitioner shall file a reply no later than November 19, 2025.

6. The Court shall decide, after reviewing the parties' papers, whether to hold a hearing on the Order to Show Cause or to take the Order to Show Cause under submission.

**IT IS SO ORDERED.**

Dated: 11/7/25

*Cynthia Valenzuela*
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE